# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 11-11182

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 5, 2013

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO SAUCEDO-CASTANON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:11-CR-17-1

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Ricardo Saucedo-Castanon sought to withdraw his guilty plea. Because the district court did not abuse its discretion by denying the motion to withdraw, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-11182

I.

Saucedo, an alien, was deported to Mexico in August 2009 after release from a Texas prison, then illegally returned to the United States. In April 2011, he drank himself into a coma after a funeral in Junction, Texas, which is in the Western District of Texas. Emergency services were called, and a local police officer found Saucedo's identification documents.

Saucedo was airlifted to a hospital in San Angelo, which is in the Northern District of Texas. The local officer reported Saucedo's information to the Law Enforcement Support Center ("LESC"), which is part of Immigration and Customs Enforcement ("ICE"). After Saucedo had been put into the hospital, LESC contacted ICE agents in San Angelo and informed them of a possible illegal alien in an alcohol-induced coma. After Saucedo had awoken from the coma, and before his discharge from the hospital, he was interviewed by ICE agents and admitted he was an illegal alien.

Saucedo pleaded guilty to one count of illegal re-entry and received a pre-sentence investigation report stating that, on the night he was found, "police were called to do a welfare check. Officers could not wake the defendant, who . . . . was flown to Shannon Hospital in San Angelo. Law enforcement learned that the defendant was an illegal alien, and immigration officials in San Angelo, Texas, were contacted."

Believing that venue in the Northern District was improper because he had been "found" by immigration officials in the Western District, Saucedo moved to withdraw his plea. Finding that "proper venue is in the Northern District of Texas," the district court denied the motion "for the reasons stated in the Government's Reply to the Defendant's motion." The court also denied a motion to reconsider and sentenced Saucedo.

No. 11-11182

## II.

Because Saucedo did not directly challenge venue in the district court, we need not decide whether or under what circumstances a defendant may contest venue after pleading guilty. The only issue is the motion to withdraw the guilty plea, which we "review . . . for an abuse of discretion." *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009). Although "there is no absolute right for a defendant to withdraw a plea," *United States v. Lampazianie*, 251 F.3d 519, 523–24 (5th Cir. 2001), he "may withdraw a plea of guilty . . . if . . . [he] can show a fair and just reason for requesting the withdrawal," FED R. CRIM. P. 11(d)(2)(B).

"[T]he defendant bears the burden to establish a 'fair and just reason' for withdrawal."[1] In *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984), we elaborated the following factors:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources and, as applicable, the . . . reasons why a defendant delayed in making his withdrawal motion.

*Id.* at 343–44.

## III.

The only "fair and just reason for withdrawal" that Saucedo offers is the

---

[1] *United States v. Puckett*, 505 F.3d 377, 382 (5th Cir. 2007) (quoting *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003)).

3

No. 11-11182

alleged impropriety of venue. The substantive statute under which he pleaded guilty establishes criminal penalties for certain removed aliens "at any time found in [] the United States." 8 U.S.C. § 1326. A "'found in' violation is a continuing violation" that ends when a previously deported alien's "physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to immigration authorities." *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996).

The record, which is devoid of evidence showing exactly when immigration authorities "discovered and noted" Saucedo's physical presence, indicates only that the local officer who discovered him in Junction called the LESC "simultaneously [with the airlift] or shortly thereafter." There is no evidence that LESC or any other immigration authority made a determination legally terminating Saucedo's "found in" offense—or even that the call to the LESC took place—before the aircraft containing a comatose Saucedo crossed from the Western District into the Northern District.[2] To the contrary, the chronology presented in the PSR suggests immigration officials "learned the defendant was an illegal alien" *after* "[t]he defendant was flown to Shannon Hospital in San Angelo . . . ." Saucedo has not met his burden of showing that the district court's finding that "proper venue is in the Northern District of Texas" was clearly erroneous, as consideration of the *Carr* factors demonstrates.[3]

_____

[2] The local officer's knowledge of or beliefs about Saucedo's illegality are irrelevant to the inquiry, because the officer is not an "immigration official."

[3] Saucedo protests that the government should not be able to benefit from the concealment of crucial facts, especially where the temporal duration of an offense element depends solely on the government's *ex parte* knowledge. Though we do not purport to decide the issue, that argument might have been availing if urged in a motion in the district court challenging venue. In the district court, the government had the burden of proving the offense element of venue by a preponderance of the evidence. *See United States v. Carreon-Palacio*, 267 F.3d 381, 391 (5th Cir. 2001). On appeal, Saucedo has the burden of showing that the district court

(continued...)

No. 11-11182

Saucedo never recanted his confession, made to ICE agents at the San Angelo hospital, that he had illegally re-entered the United States. He claims only to be "innocent of any offense in the Northern District." His plea was knowing and voluntary with respect to the substantive offense of illegal re-entry. Resentencing him in the Western District, although not significantly prejudicing the government, would waste judicial resources and would substantially inconvenience the court. Saucedo filed his motion to withdraw nearly three months after pleading guilty—a considerable delay—despite having the close assistance of counsel in the district court. As his attorney admitted at oral argument, Saucedo's primary motivation for attempting to withdraw his guilty plea is the hope of receiving a lighter sentence if his case is transferred to the Western District. Thus, "consider[ing] the totality of the circumstances," *Carr*, 740 F.2d at 344, Saucedo has not established a fair and just reason for withdrawal. We conclude, therefore, that the district court did not abuse its discretion in denying Saucedo's motion to withdraw his plea.

The judgment of conviction is AFFIRMED.

---

[3] (...continued)
abused its discretion by denying his motion to withdraw. *See Puckett*, 505 F.3d at 382.